FILED
FT. SMITH DIST.

IN THE CIRCUIT COURT OF SEBASTIAN COUNTY, ARKANSAS
CIVIL DIVISION _____

2016 FEB 26   PM 4 10

SMITH CLERK SEB. CO.

ANNA TRAYLOR                                                    PLAINTIFF

VS.                              CASE NO. CV-2016-202

ERC PROPERTIES, INC. d/b/a
ERC, INC. and/or ERNEST R.
COLEMAN CO. et al                                              DEFENDANT

## COMPLAINT

Comes now the Plaintiff, Anna Traylor, by and through her attorney, Joe D. Byars, Jr., of Byars

& Hall, and files this Complaint against Defendant ERC Properties, Inc. d/b/a ERC, Inc. and/or

Ernest R. Coleman Co., and/or ERC Construction Group, LLC; and/or ERC Developers, Inc, and/or

ERC Development Group, LLC and/or ERC Holdings, LLC and and in support thereof states and

alleges as follows:

1.    Anna Traylor is an individual and resident of the state of Arkansas.

2.    This is an action for discrimination under the Age Discrimination in Employment Act

(the ADEA), 29 U.S.C. § 621 et seq; and the Equal Pay Act, 29 U.S.C. §206(d).

3.    State Courts have concurrent jurisdiction over ADEA claims. Subject matter jurisdiction

is proper in any court of competent jurisdiction. 29 U.S.C. § 626 (c).

4.    Beginning in approximately October of 2002, the Plaintiff, Traylor, began working for

the Defendant at Defendant's location in Barling, Arkansas, under Ernest "Rod" Coleman.

5.    Defendant, ERC Properties, Inc. and/or ERC, Inc. and/or Ernest R. Coleman Co.,

and/or ERC Construction Group, LLC; and/or ERC Developers, Inc, and/or ERC Development

Group, LLC and/or ERC Holdings, LLC, was the employer of the Plaintiff, and for the one year period

prior to the filing of this action regularly employed over 50 persons. The Defendants have utilized

Page 1 of 7

EXHIBIT

A

confusingly similar names, so the actual employer of the Plaintiff is not clearly known. Plaintiff intends to sue the entity which was, in fact, her employer. Plaintiff has named the other parties out of an abundance of caution, until the proper and correct employer is identified. Until such time, all of the named parties are collectively named "ERC". Defendant, ERC (each of them) may be served with Summons and Complaint by serving their registered agent for service, John Alan Lewis, 5414 Pinnacle Point Dr., Suite 500, Rogers, AR 72758.

6.      Each of the ERC Defendants use confusing similar names, and the Plaintiff is uncertain at this time, of the name of the correct entity, but intends to sue only her employer and will voluntarily dismiss such other entities if wrongly named, at the appropriate time.

7.      All Defendants and/or the correct ERC entity are engaged in industry affecting commerce as defined by the ADEA, and are an "employer" within the meaning of the ADEA.

8.      The Plaintiff, Traylor, was well qualified for the position of program manager with ERC, and was, in fact, more qualified for the position than the younger persons selected to replace her.

9.      Traylor timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging age discrimination.

10.     The EEOC issued a Notice of Right to Sue letter to Traylor less than ninety days from the date on which this complaint was filed.

11.     The actions and conduct of the Defendants are "willful" as defined under the ADEA, and accordingly, Plaintiff is entitled to liquidated damages.

12.     Traylor was born in August of 1958, and was 56 years old at the time she was told by Mr. Robbie Coleman, the son of Rod Coleman, that her employment was terminated as of April 17, 2015.

13.     At the time, Traylor had been working with ERC for over 10 years in the

capacity as a construction project manager, and had an excellent work record and performance history with the company.

14.     Up until the date of termination, Traylor's work performance and production met or exceeded all reasonable and legitimate expectations of Defendant.

15.     Traylor's immediate supervisor was Jim Phelan, who had been the Construction Director for many years.

16.     On January 1, 2015, Rod Coleman, the principal owner of ERC brought in his son, Rob or "Robbie" Coleman, to take over the management of the company.

17.     Robbie Coleman is under the age of 40, and upon being named as "president" of the company, stated publicly, and took action demonstrating that he desires to bring on a younger work force.

18.     Robbie Coleman began to have conflicts with Jim Phelan, who is approximately 56 years of age. In April of 2015, Robbie Coleman terminated the employment of Jim Phelan.

19.     Prior to Mr. Phelan's job termination, Robbie Coleman hired Scott Deer (who is approximately in his 30's) to serve as Construction Project Manager.

20.     Traylor was placed in charge of providing training to Scott Deer.

21.     After Mr. Phelan was fired, Traylor was offered a promotion, and was offered a raise, but declined the same, out of respect for Jim Phelan.

22.     Ms. Traylor simply did not feel comfortable taking over Jim Phelan's job, at that time, because he had been Traylor's long-term supervisor. In this connection Traylor did not agree with the decision to terminate Mr. Phelan, and Traylor believes that Rob Coleman was aware of that fact.

23.     After Traylor declined the raise and promotion, Robbie Coleman called a meeting with Ms. Traylor and began to making accusations about her attitude and job performance on items which would not be true grounds for legitimate criticism.

24.    Robbie Coleman said others said that Traylor was "snappy" and that her attitude was not good, but he refused to say who made such statements.

25.    Robbie Coleman then made a remark about the fact that Traylor had taken a client out to lunch, implying that she should not have done so. In any event, taking the client to lunch was against no policy or instruction of the Defendant.

26.    Finally, Traylor was accused of not attending a meeting; but Traylor complied with the normal office protocol for not being present. In fact, there was no formal "meeting" to attend at any particular time. Ms. Traylor "met" with the individuals on the same day, and completed her job duties without incident.

27.    Other issues were brought up in the meeting which were never previously an issue or problem.

28.    At the end of the meeting, Mr. Coleman said that he was concerned that Traylor may "quit". Ms. Traylor informed Mr. Coleman that if quitting truly was her intention, then she would give him advance notice.

29.    Traylor was then asked by Robbie Coleman to take some personal days off and to let Robbie Coleman know if it Ms. Traylor's intention was to quit.

30.    Traylor did as instructed, and decided that while the meeting was certainly strange, she did not desire to quit her employment.

31.    Accordingly, Traylor called to advise that she had no intention of quitting.

32.    Nevertheless, Robbie Coleman proceeded to tell Ms. Traylor that she was terminated from her job.

33.    Traylor was the only female project manager ever employed with ERC Properties.

34.    Traylor was initially hired as an assistant project manager, but was promoted by Jim Phelan to serve as project manager.

35.     Approximately three (3) years ago, Chris Thompson (male) was employed as a project manager who was approximately in his 30's. Traylor discovered Thompson was paid more than her, and Traylor believes she was paid a lower wage than all of the comparable male employees. For this reason, Traylor was subjected to gender discrimination, and the actions and conduct of Defendant violate the Equal Pay Act.

36.     Traylor was terminated because of her age (56), in violation of the Age Discrimination in Employment Act, and observed a clear pattern of Mr. Coleman terminating older employees, and hiring substantially younger workers. Traylor believes Scott Deer was hired to essentially take her job.

37.     Since Robbie Coleman took over the lead and began to make management decisions, multiple employees over the age of forty have lost their jobs via involuntary job termination. For example, in approximately February of 2015, Robbie Coleman terminated the employment of Ever Manzano, who was over the age of 50. A substantially younger employee took over Mr. Manzano's job duties.

38.     On or about January 17, 2016, Robbie Coleman terminated the employment of Stanley Cox, who was approximately age 60 at the time.

39.     On or about January 28, 2016, Robbie Coleman terminated the employment of Steve Caviness, who was approximately 60 years old at the time. Mr. Caviness was an excellent estimator for a substantial number of years for the company. Prior to terminating the employment of Mr. Caviness, Coleman and ERC hired a substantially younger estimator, and had Steve train him before he was fired.

40.     In the past 6 months to 1 year, Robbie Coleman has engaged in a pattern and practice to terminate the employment of older workers at ERC, only to replace them with substantially younger workers. Multiple older workers, in addition to those named, have lost their jobs and have been replaced by substantially younger employees.

41.     The actions of the Defendants as described above constitute unlawful age

Page 5 of 7

discrimination against Traylor in violation of the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 621, *et seq.*

42.     The actions and conduct described above in connection with Ms. Traylor being paid less than her male counterparts in similar job positions constitutes a violation of the Equal Pay Act. Traylor was damaged by the failure of ERC to comply with the Equal Pay Act, and should be entitled to recover her actual damages plus liquidated damages allowed by law.

43.     As a result of the age discrimination actions of Defendants as described above, Traylor suffered actual damages in the form of lost wages, both past and future, and lost and/or replacement benefits.

44.     As a result of the age discrimination actions of Defendants as described above, Traylor suffered compensatory damages in the form of pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

45.     The unlawful age discrimination actions of Defendants as described above were done with malice or reckless indifference to Traylor's protected rights, thus entitling Traylor to punitive damages.

46.     The unlawful age discrimination actions of Defendants as described above were done willfully, thus entitling Traylor to liquidated damages.

47.     Plaintiff has found it necessary to engage the undersigned counsel to represent her in this matter, and is entitled to recover attorney's fees and costs.

WHEREFORE, premises considered, Plaintiff asserts that she was terminated from her employment in violation of the Age Discrimination in Employment Act or was otherwise subjected to discrimination under the ADEA , and was paid less than male workers in similar positions, and respectfully prays as follows:

a.  that the Court enter a declaratory judgment finding that the Defendant(s) [Plaintiff's employer] violated the ADEA, and the Equal Pay Act as to Plaintiff;

b.  that Defendants' violations of the ADEA, and the Equal Pay Act were "willful";

c.  that Plaintiff be awarded actual damages and liquidated damages for failure to pay compensation earned, and which would have been earned but for the wrongful discharge;

d.  that Plaintiff be awarded attorney's fees and costs;

e.  that Plaintiff be awarded back pay, and an equal sum as liquidated damages, and prejudgment interest as may be proved at trial for Defendants' violation of the ADEA, in addition to attorney's fees and costs of court, and for such other relief to which he may be entitled to receive; and

f.  Plaintiff respectfully requests a jury trial on all issues triable to a jury.

RESPECTFULLY SUBMITTED,
ANNA TRAYLOR, *Plaintiff*

Joe D. Byars, P.A. Ltd.
BYARS & HALL
Attorneys at Law
401 Lexington Avenue
Fort Smith, Arkansas 72901
Tel. 479-494-1800
Fax 479-783-0694
jbyars@bhhfirm.com

By:_____
Joe D. Byars, Jr., AR Bar #95107

Page 7 of 7